IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ELIZABETH J. LEWIS,                        )
individually and as Administratrix for the )
Estate of Henry Lee Lewis, III, deceased,  )
                                           )
        Plaintiff,                         )
                                           )
    v.                                     )        CASE NO. 2:04-CV-858-WKW
                                           )                 (WO)
CITY OF MONTGOMERY, *et al.*,              )
                                           )
        Defendants.                        )

## MEMORANDUM OPINION AND ORDER

This action is presently before the Court on the defendants' Motion to Dismiss (Doc. # 3).

For the reasons set forth below, the motion is due to be granted in part and denied in part.

## I.  FACTS AND PROCEDURAL HISTORY

The plaintiff's complaint sets forth the following facts:  On August 19, 2002, at

approximately 1:15 a.m., Henry Lee Lewis III ("Decedent") was driving in Montgomery, Alabama,

and was stopped by two Montgomery City Police Officers for improper tail lights.  The officers ran

a search on the Decedent and, upon discovering outstanding arrest warrants, arrested him and placed

him in the back of a police car.  The police officers called the Decedent's wife, Elizabeth Lewis

("Lewis") to come for the Decedent's car.  Lewis arrived at the scene at approximately 1:30 a.m. and

found the Decedent in the back of the police car, handcuffed and sweating heavily.  Lewis informed

the officers that the Decedent had recently undergone brain surgery, and pointed out that the

Decedent's doctor was located at the hospital directly across the street from where the police car was

parked.  Upon being informed that the officers had discovered outstanding warrants against the

Decedent, Lewis told them that they had made a mistake and that the Decedent had recently paid his

fines from all previous citations and had his driver's licence reinstated.  The police officers took the Decedent to the police station.  At approximately 2:15 a.m., the Decedent called Lewis and told her he was not feeling well.  He told her that someone at the police station had informed him that he owed $1,900 in fines, and if he could not pay, he would have to spend six months in jail.  Lewis went to the police station at approximately 1:00 p.m. the next day.  When she inquired about the Decedent, the officer at the front window had difficulty retrieving information.  He informed Lewis that it would cost $1,089 to get her husband out of jail.  She asked to see the Decedent.  The officer directed her to another window, where she was denied access to the Decedent.  Lewis returned to the first window, and the officer there called another officer, who escorted Lewis to the homicide division.  There, a homicide officer informed her that her husband had died.  Lewis returned to the police station approximately one week later to retrieve her husband's belongings.  Another inmate informed her that, on the night of his death, the Decedent had repeatedly told the jail administrators that the had just had brain surgery and needed medical attention.  The inmate told Lewis that he (the other inmate) also told administrators that the Decedent needed help; he even turned the security camera on the Decedent so that security personnel could see his condition.  The Decedent did not receive medical attention; he lapsed into seizures and died in his cell.

Lewis filed a complaint in the Montgomery County Circuit Court on July 1, 2004 against the City of Montgomery; Bobby Bright, mayor of Montgomery; the Montgomery Police Department; John Wilson, chief of the Montgomery Police Department; Willie Collins, administrator of the Montgomery City Jail; D.W. Warren, commander of the administrative division; C.G. Hardy, assistant commander of the administrative division;  K.J. Murphy, commander of the patrol unit; J.D. McQueen, assistant commander of the patrol unit; (collectively "defendants") and several

fictitious defendants.  The defendants removed the case to federal court on September 10, 2004.  The

complaint alleges claims for deprivation of civil rights under 42 U.S.C. § 1983, denial of due process

of law, cruel and unusual punishment, wrongful death, negligence, respondeat superior, negligent

or wanton supervision, false imprisonment, suppression, and loss of consortium.  The defendants

filed a motion to dismiss on October 1, 2004.

## II.  MOTION TO DISMISS STANDARD

A court may dismiss a complaint for failure to state a claim only if it is clear that no relief

could be granted under any set of facts that could be proven consistent with the allegations in the

complaint.  *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *see also Wright v. Newsome*,

795 F.2d 964, 967 (11th Cir. 1986) ("[W]e may not . . . [dismiss] unless it appears beyond doubt that

the plaintiff can prove no set of facts in support of the claims in the complaint that would entitle him

or her to relief.") (citation omitted).  In evaluating a motion to dismiss, the court will accept as true

all well-pleaded factual allegations and reasonable inferences drawn from those facts, and will view

them in a light most favorable to the nonmoving party.  *Hishon*, 467 U.S. at 73; *see also Oladeinde*

*v. City of Birmingham*, 963 F.2d 1481, 1485 (11th Cir. 1992).  The threshold is "exceedingly low"

for a complaint to survive a motion to dismiss for failure to state a claim.  *Ancata v. Prison Health*

*Services, Inc.*, 769 F.2d 700, 703 (11th Cir. 1985).  However, in cases brought under 42 U.S.C. §

1983, when qualified immunity is an issue, the threshold is high.  *See Marsh v. Butler County*, 268

F.3d 1014 (11th Cir. 2001), *implicitly modified by Hope v. Pelzer*, 536 U.S. 730 (2002); *see also*

*GJR Investments, Inc. v. County of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998) ("A district

court may not infer claims other than those that plainly appear on the face of the complaint to defeat

a defense of qualified immunity.").

## III. DISCUSSION

*A.    Fictitious Parties*

The defendants assert that fictitious party practice is not permitted under the Federal Rules of Civil Procedure, and that the plaintiff's claims against any fictitious parties should therefore be dismissed.  In general, "fictitious-party pleading is not permitted in federal court." *Edwards v. Ala. Dept. of Corr.*,  81 F. Supp. 2d 1242, 1257 (M.D. Ala. 2000).  *See also Harris v. Palm Harbor Homes, Inc.*, 198 F. Supp. 2d 1303, 1304 (M.D. Ala. 2002); *Wiggins v. Risk Enterprise Mgmt. Ltd.*, 14 F. Supp. 2d 1279 (M.D. Ala. 1998); *Floyd v. Allstate Ins. Co.*, 989 F. Supp. 1435, 1436 (M.D. Ala. 1998).  However, some courts have found that, where the name of a specific person whom the plaintiff wishes to join as a defendant is unknown, the plaintiff may substitute an unnamed defendant until the plaintiff is able to discover the defendant's name.  *See Scheetz v. Morning Call, Inc.*, 130 F.R.D. 34 (E.D. Pa. 1990) (finding that fictitious parties may be named as defendants in a complaint, based on the plaintiff's inability to identify real parties, until the plaintiff has had reasonable opportunity to discover their identities through discovery).  In *Dean v. Barber*, 951 F.2d 1210 (11th Cir. 1992), the Eleventh Circuit held that a pro se plaintiff should be allowed to add "Chief Deputy of the Jefferson County Jail John Doe" as a defendant, when the plaintiff indicated that he had not yet received a report from the jail which contained the name of the chief deputy.

The fictitious defendants will be dismissed.  However, Lewis will be allowed leave to amend her complaint to allege with more particularity the identity of the persons allegedly responsible for the death of the Decedent.

*B.    Claims Against Montgomery Police Department*

The defendants assert that the Montgomery Police Department is not a legal entity subject

to suit.  *See Dean*, 951 F.2d at 1214.  Lewis concedes this point, and the Court therefore finds that

any claims asserted against the Montgomery Police Department are due to be dismissed.

C.      *Claims Against City of Montgomery*

        The defendants argue that the plaintiff's claims against the City of Montgomery ("City") are

barred by the Alabama statute of non-claims establishing limitations on personal injury claims

against municipalities.   The Alabama Code states that any claims against a municipality "for

damages growing out of torts shall be presented within six months from the accrual thereof or shall

be barred."  Ala. Code § 11-47-23 (1975).  A later section of the Code further states:

> No recovery shall be had against any city or town on a claim for
> personal injury received, unless a sworn statement be filed with the
> clerk by the party injured or his personal representative in case of his
> death stating substantially the manner in which the injury was
> received, the day and time and the place where the accident occurred
> and the damages claimed.

Ala. Code § 11-47-192 (1975).

        Lewis submitted a claim to the City on February 4, 2003, within six months after the death

of the Decedent.  The City acknowledged receipt of the claim on February 12, 2003, and on April

14, 2003, issued a letter denying Lewis' claim for compensation.  The City's reply letter indicated

that an investigation had been conducted into her husband's death, and that the City concluded no

wrongdoing had occurred.

        The defendants claim that, because Lewis' notice indicated only that the Decedent had a heart

condition, she may not now bring a claim indicating that the Decedent had recently undergone brain

surgery at the time of his death. "The purpose of the claims statute is to enable the municipality: 1)

to investigate and determine the merits of the claim; and 2) to adjust claims without the expense of

litigation if the circumstances warrant." *Fuller v. City of Birmingham*, 377 So. 2d 957, 959 (Ala. 1979).   The City has not indicated in what way it would have responded to Lewis' claim differently or what additional investigation would have been conducted if Lewis had originally claimed that her husband suffered from a brain condition rather than a heart condition.   Because it appears that the City was able to investigate the merits of Lewis' claim, in spite of the variance in medical conditions claimed, the Court finds that Lewis complied with Alabama's notice statute and is not barred from asserting her claims against the City in this action.

D.      *Section 1983 Claims*

No federal statute provides specifically for the survival of claims made pursuant to 42 U.S.C. § 1983.   However, 42 U.S.C. § 1988 provides that, in such situations, "federal courts are to be governed by 'the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of [the] civil . . . cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States.'" *Robertson v. Wegmann*, 436 U.S. 584, 587 (1978) (citation omitted).   Courts have therefore applied state survival statutes and wrongful death statutes to actions arising from § 1983 claims after a claimant has died.

The survival of § 1983 claims in Alabama, however, is problematic.   Alabama's wrongful death statute provides for recovery only of punitive damages; no compensatory damages are available.   *See* Ala. Code § 6-5-410 (1975); *King v. Nat'l Spa and Pool Institute, Inc*., 607 So. 2d 1241, 1246 (Ala. 1992) ("[T]he Wrongful Death Act provides only for punitive damages, and compensation is not a factor in a wrongful death claim.").   Further, punitive damages may not be sought against a municipality.   The Supreme Court noted that "an award of punitive damages against a municipality 'punishes' only the taxpayers, who took no part in the commission of the tort," and

explicitly held that "a municipality is immune from punitive damages under 42 U.S.C. § 1983." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 267-71 (1981). *See also* Ala. Code § 6-11-26 (1975) ("Punitive damages may not be awarded against the State of Alabama or any county or municipality thereof, or any agency thereof . . . ."). If this Court were to apply Alabama state law governing wrongful death claims to any § 1983 claims resulting in death, the end result would be complete immunity for any municipality that causes the death of an individual through deprivation of that individual's civil rights. This result would be inconsistent with the Constitution and laws of the United States.

Despite multiple holdings by the Alabama Supreme Court insisting that there is nothing inconsistent with federal law in this outcome, *see, e.g., City of Tarrant v. Jefferson*, 682 So. 2d 29 (Ala. 1996); *Carter v. City of Birmingham*, 444 So. 2d 373 (Ala. 1983), at least one federal court has come to a different conclusion. *See Weeks v. Benton*, 649 F.Supp. 1297, 1303-1309 (S.D. Ala. 1986) (holding that Alabama's "wrongful death statute should not be held to foreclose the recovery of compensatory damages against the governmental entity in question, for such a result would be inconsistent with the policies underlying § 1983."). In addition, the Eleventh Circuit has noted this same inconsistency and suggested that the Alabama wrongful death statute is not an acceptable means through which to bring a § 1983 claim, because compensatory damages ought to be available for such a claim. *See Gilmere v. City of Atlanta, Ga.*, 864 F.2d 734, 740 n.7 (11th Cir. 1989) ("The Alabama wrongful death statute, Ala.Code § 6-5-410, provides only for assessment of punitive damages. Because the statute is inconsistent with the rule that damages in § 1983 actions are to be compensatory, reliance on the Alabama wrongful death statute would not be proper under § 1988.") (citations omitted).

The *Gilmere* and *Weeks* decisions are persuasive and are due to be followed. Therefore,

Lewis' § 1983 claims for compensatory damages against the City are to remain.[1]  Additionally, following reasoning in *Gilmere*—that § 1983 actions are for the purpose of providing compensatory damages—Lewis' § 1983 claims against defendants Bright, Collins, Wilson, Warren, Hardy, Murphy and McQueen in their individual capacities also will remain in the case at this stage in the proceedings.

The defendants assert that the City cannot be held liable for claims under § 1983 on a *respondeat superior* theory.  The Supreme Court has held that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents."  *Monell v. Dept. of Social Svcs. of City of New York*, 436 U.S. 658, 694 (1978).  However, to the extent that Lewis seeks to hold the City directly liable under § 1983, that is permitted, if Lewis can show that the alleged constitutional violation was based on a policy or custom of the city.  *See id.* ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.").

E.    *Qualified Immunity*

Before addressing the defense of qualified immunity, the Court notes that Lewis has alleged in her complaint violations of the Fourth, Fifth, Eighth and Fourteenth Amendments; however, the Court finds only violations of the Fourth and Fourteenth Amendments stated in the complaint.  Due process challenges against the federal government are properly brought under the Fifth Amendment, but due process challenges against a state or local government entity are brought under the

---

[1] "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).  Because all individually-named defendants are employees of the City of Montgomery, Lewis' claims against the defendants in their official capacities are essentially claims against the City.  The Court will dismiss the claims against officials of the City of Montgomery in their official capacities.

Fourteenth Amendment. *Buxton v. City of Plant City, Fla.*, 871 F.2d 1037, 1041 (11th Cir. 1989). Further, allegations of cruel and unusual punishment brought by pretrial detainees are analyzed under the Fourteenth Amendment right to due process, rather than the Eighth Amendment. *Hamm v. DeKalb County*, 774 F.2d 1567, 1572 (11th Cir. 1985).   Counts two and three of the complaint, therefore (alleging cruel and unusual punishment and due process violations), are subsumed within count one, alleging violations under 42 U.S.C. § 1983.  While Lewis' Fourth Amendment claim is not pleaded in quite as clear a manner, the Court presumes for present purposes that Lewis intends to claim that the Decedent's Fourth Amendment rights were violated at the time of his arrest.

The defendants assert the defense of qualified immunity.  "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  While qualified immunity is typically addressed at the summary judgment stage of a case, the defense may be raised and considered on a motion to dismiss; the motion will be granted if the "complaint fails to allege the violation of a clearly established constitutional right." *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002) (quoting *Chesser v. Sparks*, 248 F.3d 1117, 1121 (11th Cir. 2001)).

Qualified immunity analysis consists of three distinct steps: first, the defendants must have been acting within the scope of their discretionary authority; second, the defendants' acts must have violated a constitutional right of the Decedent; and third, that constitutional right must have been clearly established at the time of the violation.

### 1.    *Discretionary Authority*

The first step of the analysis is satisfied; it is not disputed that the defendants were acting

within their discretionary authority at any time during the events described in the complaint.

     2.    *Constitutional Violation*

    *Fourteenth Amendment.*  The second step is partially satisfied in that Lewis has adequately alleged a violation of the Decedent's constitutional rights under the Fourteenth Amendment. Pretrial detainees have a constitutional right to receive medical care, and prison officials who demonstrate "deliberate indifference" to the health and safety of inmates violate their constitutional rights. *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976). Lewis has alleged that the defendants deliberately denied requested medical treatment to the Decedent, and that as a result, he died. The complaint adequately alleges a constitutional violation under the Fourteenth Amendment.

    *Fourth Amendment.*  The only event described in Lewis' complaint that could give rise to a Fourth Amendment violation was the Decedent's arrest. Lewis has alleged that she informed the arresting officers that the Decedent had paid all of his fines and that he did not have any outstanding arrest warrants. "The Fourth Amendment's guarantee against unreasonable searches and seizures encompasses the right to be free from arrest without probable cause." *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004). In the qualified immunity context, the Court looks to whether arguable probable cause existed to make an arrest.

> Qualified immunity applies when there was arguable probable cause for an arrest even if actual probable cause did not exist. . . . Arguable probable cause exists if, under all of the facts and circumstances, an officer reasonably could—not necessarily would—have believed that probable cause was present. . . . Whether a particular set of facts gives rise to probable cause or arguable probable cause to justify an arrest for a particular crime depends, of course, on the elements of the crime.

*Id.* at 1332-33. Lewis has alleged that the Decedent was arrested by mistake, because the arresting officers relied on erroneous information that there were outstanding warrants for the Decedent.

Clearly, the existence of outstanding warrants is probable cause to arrest a suspect. *Coral v. State*, 628 So. 2d 954, 973 (Ala. Cr. App. 1992) ("[A] peace officer's knowledge of the existence of an outstanding warrant constitutes probable cause on which he may make the arrest . . . .") (citation omitted).   Lewis' claim, however, seems to be that, because the officers were allegedly mistaken about the existence of outstanding warrants, they did not have probable cause to arrest the Decedent. Lewis has offered no case law or other authority to establish that, in order to meet the arguable probable cause standard, officers are required to double-check their information after being contradicted by a member of the arrestee's family.[2]  Therefore, as to any Fourth Amendment claim asserted by Lewis, the defendants are entitled to qualified immunity.

>    3.    *Clearly Established Constitutional Right*

The final step in the qualified immunity analysis requires the Court to decide whether the constitutional right in question was clearly established at the time of the violation.  Because the Supreme Court has held explicitly that "intentionally denying or delaying access to medical care" for a prisoner is a violation of that prisoner's constitutional rights, *see Estelle*, 429 U.S. at 104-05, the Court finds that the Decedent's right to medical care in the Montgomery City Jail was clearly established at the time of his arrest.   Therefore, at this stage of the case, the defendants are not entitled to qualified immunity as to the claim that the Decedent's Fourteenth Amendment rights as a pretrial detainee were violated.

---

[2] Lewis offered *Swan v. City of Hueytown*, 2004 WL 2488342 (Ala. 2004), as an example of a case in which a police officer in a similar situation—having arrested a person based on an outstanding warrant for a different person with a similar name—was not found to have state-agent immunity for the arrest.  On rehearing, however, the Alabama Supreme Court reversed its earlier opinion and found that the officer *did* have state-agent immunity.  *See Swan v. City of Hueytown*, 920 So. 2d 1075 (Ala. 2005).  Additionally, state-agent immunity is distinct from qualified immunity, and a finding regarding state-agent immunity would not necessarily inform this Court's analysis of qualified immunity.

F.    *Wrongful Death Claim*

   1.    *Defendants*

As discussed in part D above, no meaningful remedy is available under Alabama's wrongful death act against a municipality, due to the rule against awarding punitive damages against a municipality.  Lewis' wrongful death claim is therefore due to be dismissed as to the City of Montgomery and defendants Bright, Wilson, Collins, Warren, Hardy, Murphy and McQueen in their official capacities.  Lewis' wrongful death claims remain against defendants Bright, Wilson, Collins, Warren, Hardy, Murphy and McQueen in their individual capacities.

   2.    *Other Tort Claims*

Because Decedent's unfiled tort claims do not survive his death, the only state-law claim Lewis may allege on the Decedent's behalf is wrongful death.  *See* Ala. Code § 6-5-462 (1975).  *See also Bassie v. Obstetrics & Gynecology Assoc. of Northwest Ala., P.C.*, 828 So. 2d 280, 282 (Ala. 2002)* ("In Alabama, a deceased's unfiled tort claims do not survive the death of the putative plaintiff.");  *King v. Nat'l Spa and Pool Institute, Inc.*, 607 So. 2d 1241, 1248 (Ala. 1992) ("Alabama's Wrongful Death Act . . .  remains the sole remedy for the tortious infliction of death in our state, and the damages recoverable under that Act remain solely punitive.").  The other tort claims alleged on Decedent's behalf, therefore—negligence, respondeat superior, negligent supervision and false imprisonment—are due to be dismissed.  The tort claims Lewis has alleged on her own behalf—including loss of consortium—remain.  *See Zimmerman v. Lloyd Noland Fdtn., Inc.*, 582 So.2d 548, 551 (Ala. 1991).

G.    *Suppression Claims*

The defendants argue that the plaintiff's suppression claim is not stated with sufficient particularity as required under Fed. R. Civ. P. 9(b).  Rule 9(b) requires that a complaint alleging

12

fraud by suppression state (1) what omissions were made, (2) the time, place and identity of the person responsible for the omissions, (3) the manner in which the plaintiff was misled, and (4) what the defendants gained as a consequence of the fraud. *Morrow v. Green Tree Servicing,* 360 F. Supp. 2d 1246, 1250 (M.D. Ala. 2005) (citing *Brooks v. Blue Cross & Blue Shield of Fla.*, 116 F.3d 1364 (11th Cir. 1997)).

In her complaint, Lewis alleges that the defendants suppressed the fact that the Decedent died due to lack of medical attention and the fact that both the Decedent and other inmates had alerted the defendants about the Decedent's need for medical attention. Lewis seems to be alleging that the defendants have been engaged in a cover-up rather than fraud. The complaint does not allege what duty the defendants had to reveal information about the Decedent, nor does it state what specific information Lewis believes was suppressed by the defendants.

The Court finds that Lewis has not alleged facts in her complaint sufficient to allege a cause of action for suppression. The defendants' motion to dismiss this claim is therefore due to be granted.

## IV.  CONCLUSION

For the reasons stated above, it is hereby ORDERED that the defendants' Motion to Dismiss (Doc. # 3) is GRANTED in part and DENIED in part. It is further ORDERED that the following claims are dismissed:

1.    All claims against fictitious defendants.

2.    All claims against the Montgomery Police Department.

3.    Any constitutional violations asserted under the Fourth, Fifth or Eighth Amendments.

4.    Any claim asserted under the Alabama Wrongful Death Act against the City of Montgomery and defendants Bright, Wilson, Collins, Warren, Hardy, Murphy and

13

McQueen in their official capacities.

5.      All claims for negligence, respondeat superior, negligent supervision, false imprisonment and suppression.

6.      All § 1983 claims against officials of the City of Montgomery in their official capacities.

Therefore, the following claims remain:

1.      Plaintiff's claim under 42 U.S.C. § 1983 for compensatory damages against the City of Montgomery and defendants Bright, Wilson, Collins, Warren, Hardy, Murphy and McQueen in their individual capacities.

2.      Plaintiff's claim under the Alabama Wrongful Death Act for punitive damages against defendants Bright, Wilson, Collins, Warren, Hardy, Murphy and McQueen in their individual capacities.

3.      Plaintiff's claim for loss of consortium against all remaining defendants.

Done this the 27th day of June, 2006.


        /s/   W.  Keith Watkins
        UNITED STATES DISTRICT JUDGE

14